## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-22090-KMM

SHEHAN WIJESINHA,
individually and on behalf of all others
similarly situated,

    Plaintiff,

v.

DIRECTV, LLC,

    Defendant.

_____/

### ORDER GRANTING MOTION TO COMPEL ARBITRATION

THIS CAUSE came before the Court upon Defendant's Motion to Compel Arbitration (ECF No. 10). Plaintiff filed a Response in Opposition (ECF No. 15), and Defendant filed a Reply (ECF No. 18). The matter is now ripe for review. For the reasons stated below, the Motion is granted.

**I.     BACKGROUND**

    **A.     Factual Background**

This case arises out of a dispute over telephone calls Plaintiff Shehan Wijesinha ("Plaintiff") received from Defendant DIRECTV, LLC ("DIRECTV") in an attempt to solicit Plaintiff to resume service with DIRECTV.

DIRECTV is a provider of satellite television services. *See* Declaration of Shehan Wijesinha (ECF No. 15-1) ("Wijesinha Decl."), at ¶ 1. In July of 2013, Plaintiff entered into a two-year agreement with DIRECTV for satellite television services. *Id.* In September of 2015, prior to expiration of the two-year agreement, Plaintiff contacted DIRECTV in an attempt to negotiate a new agreement with a better price. *Id.* ¶ 2. Plaintiff was unable to secure a more

favorable agreement for DIRECTV's services and upon termination of the agreement, paid all account balances, and returned all associated equipment to DIRECTV. *Id.* ¶¶ 2-3. Following termination of the agreement, Plaintiff did not accept or receive any new satellite television services from DIRECTV. *Id.* ¶ 4. Following termination of services, Plaintiff began to receive automated calls from DIRECTV and instructed the company's representative that Plaintiff was not interested in DIRECTV's offers and had switched service providers. *Id.* ¶¶ 5-6. Plaintiff also instructed the DIRECTV representative to desist from placing any future calls to Plaintiff's cellular phone. *Id.* ¶ 7. Despite Plaintiff's request, Plaintiff received approximately six automated marketing calls from DIRECTV over the course of approximately six months. *Id.* ¶ 8. At some point, Plaintiff spoke to a live DIRECTV representative and was informed of new satellite television packages and was invited to enter into a new agreement with DIRECTV for television services. *Id.* ¶ 9.

Plaintiff alleges two causes of action. *See* Complaint (ECF No. 1). In Count I, Plaintiff alleges DIRECTV knowingly and/or willfully violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), by calling Plaintiff's cellular phone without first obtaining prior express consent and using equipment which constitutes an automatic telephone dialing system. In Count II, Plaintiff alleges DIRECTV violated the TCPA, 47 U.S.C. § 227(c), by calling Plaintiff and other members of the proposed class more than once within a 12-month period for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

DIRECTV moves to compel arbitration. DIRECTV argues that the parties entered into a valid and binding agreement to arbitrate disputes and that this dispute falls within the scope of the agreement. *See* Mtn. to Compel Arbitration (ECF No. 10). In opposition, Plaintiff argues

that there is no operative agreement to arbitrate because the Customer Agreement was terminated upon cancellation of service. *See* Pl's Opp. (ECF No. 15). Plaintiff does not argue that there was never a valid agreement to arbitrate—simply that it expired along with the termination of services. *Id.* Further, Plaintiff argues that even if the agreement to arbitrate persists, the claims that are the subject of this dispute are beyond the scope of that agreement. *Id.*

B.  **The Agreements Between DIRECTV and Plaintiff**

The relationship between DIRECTV and each customer is governed principally by a service contract between the parties (the "Customer Agreement"), which sets forth the parties' rights and obligations, and explains the terms and conditions of subscribing to DIRECTV services. *See* Declaration of Ivy S. Rankin (ECF No. 11) ("Rankin Decl."), ¶ 3. As an addendum to the Customer Agreement, customers also receive an Equipment Lease Agreement. *Id.* ¶ 8. Plaintiff received copies of the Customer Agreement and Equipment Lease Agreement on several occasions, including each time the agreements were updated. *See id.* ¶ 14. Each version of the Customer Agreement contained the arbitration provision in question. *Id.* Ex. 3, Ex. 6, and Ex. 7.

The Customer Agreement contains a section entitled "Resolving Disputes" and applies to "any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a 'Claim')." *See* Rankin Decl., Ex. 3 § 9. In the event that informal resolution of the dispute is unsuccessful, any Claim asserted by either party is to be resolved "only by binding arbitration." *Id.* § 9(b). The Equipment Lease Agreement similarly requires arbitration in the event of a dispute, in accordance with the terms set forth in the Customer Agreement. *See* Rankin Decl., Ex. 4. The life of the Customer Agreement "is indefinite" and "[t]he terms of this

3

Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed." *See* Customer Agreement, § 5(a), §10(d).

## II. APPLICABLE LAW

The Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614, 631 (1985); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (noting that where parties have seen fit to adopt arbitration clauses in their agreements, there is a "strong federal policy in favor of enforcing [them]"). The validity of an arbitration agreement is governed by the Federal Arbitration Act ("FAA"). *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1309 (S.D. Fla. 2009) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312-13 (11th Cir. 2002)). "The FAA establishes a 'federal policy favoring arbitration . . . requiring that [courts] rigorously enforce agreements to arbitrate.'" *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

The FAA provides that a court must either stay or dismiss a lawsuit and compel arbitration upon a showing that "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2–4). Pursuant to this policy, courts must construe "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985). Thus the party opposing arbitration has the burden, "not unlike that of a party seeking summary judgment," of showing why the court

should not compel arbitration. *Bhim*, 655 F. Supp. 2d at 1310 (citing *Aronson v. Dean Witter Reynolds, Inc.*, 675 F. Supp. 2d 1324, 1325 (S.D. Fla. 1987) (citations omitted)).

**III.   ANALYSIS**

### A.  A Valid Agreement to Arbitrate Exists

The Supreme Court recognized a "presumption in favor of postexpiration arbitration of matters unless negated expressly or *by clear implication*." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (internal quotation marks and citation omitted).  Indeed, the Court of Appeals for the Sixth Circuit found "the need for an arbitration provision to have post-expiration effect is intuitive."  *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 395 (6th Cir. 2014). This is so because if "the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Zucker v. After Six, Inc.*, 174 Fed. App'x 944, 947-8 (6th Cir. 2006).

Here, the Customer Agreement contains a survivability clause.  *See* Customer Agreement, §§ 5(a), 10(d) (the term of the Customer Agreement "is indefinite" and "[t]he terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.")  But the question remains whether the arbitration provision is a term that "expressly or by [its] nature survive[s] termination."  First, there is no support for the proposition that the arbitration provision was negated expressly or by clear implication following expiration of the Customer Agreement.  Second, the Court finds that the strong presumption in favor of "post-expiration arbitration" supports DIRECTV's argument that the arbitration provision remains in effect following termination of the Customer Agreement.  Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.

### B. Plaintiff's Claims Fall Under the Scope of the Arbitration Agreement

DIRECTV argues that Plaintiff's dispute falls under the scope of the arbitration provision contained in the Customer Agreement. Plaintiff argues that the dispute arose following termination of the relationship between the parties and even if the Court finds a valid agreement to arbitrate exists, which it does, that this particular dispute is not subject to arbitration. Plaintiff's argument relies on the fact that DIRECTV's calls were made in an attempt to solicit *new* business from Plaintiff which Plaintiff argues would not be subject to the old Customer Agreement.

A dispute is arbitrable if the parties have agreed to arbitrate it. *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F. 3d 1342, 1344 (11th Cir. 2008). The Court of Appeals for the Eleventh Circuit stated:

> Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992). Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

*Telecom Italia, Spa v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).

"Federal courts interpret arbitration clauses broadly where possible," and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Investments, Ltd. V. Banco Santander S.A.*, 672 F.3d 981, 988-89 (11th Cir. 2012 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). However, the presumption in favor of post-expiration arbitration of matters is "limited by the vital qualification that arbitration [is] of matters and disputes arising out of the relation governed by contract." *Litton*, 501 U.S. at 204. To determine whether a dispute arises out of a contract, the Court of Appeals for the Eleventh

Circuit has focused on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (internal citations omitted). "Relating to" sets "a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond." *Id.*

The arbitration provision in the Customer Agreement is broad. In order to be arbitrable, the claim must *relate to* the agreement, any addendum, or the customer's service. Here, Plaintiff attempted to negotiate a new service contract, terminated services with DIRECTV, and subsequently received the at-issue calls in an attempt to inform Plaintiff of new service plan options. The Court finds that these calls are indeed related to Plaintiff's service and thus fall within the scope of the arbitration provision in the Customer Agreement.

In *Andermann v. Sprint Spectrum LP¸* the Seventh Circuit opined on a case with a similar set of facts. 785 F.3d 1157 (7th Cir. 2015). There, plaintiff obtained cellular phone service from U.S. Cellular and the parties' contract contained a broad arbitration clause stating that "any controversy or claim arising out of or relating to" the contract would be resolved by binding arbitration. *Id.* at 1158. The contract also contained an assignment provision and in fact U.S. Cellular assigned the contract to Sprint. *Id.* Sprint notified plaintiffs that their contract was due to terminate. *Id.* Sprint also placed six telephone calls notifying plaintiffs of Sprint's "great set of offers and devices available to fit [their] needs." *Id.* Sprint placed these calls after the plaintiffs had already signed on with a new service provider and after termination of their contract with Sprint. *Id.* Plaintiffs filed suit alleging that the six telephone calls violated the TCPA and Sprint moved to compel arbitration. *Id.* The district court ruled in favor of the plaintiffs on the ground that because Sprint's contract with them terminated before the phone

calls that were the basis of the lawsuit, "the dispute over the legality of the calls could not have arisen from or related to the contract." *Id.*  However, the Seventh Circuit reversed the district court's ruling and found that "[a]ctually there's an intimate relation" between the calls and the original contract. *Id.*  The Court of Appeals went on to say "[m]ore likely the case falls within the exception in the Telephone Consumer Protection Act for telephone solicitations made 'to any person with whom the caller has an established business relationship' . . . without adding its offer to substitute an equivalent service[, s]o truncated a communication would gratuitously have deprived the Andermanns of what might have been an attractive opportunity for them." *Id.* at 1159.  Here, as in *Andermann*, the parties have an established business relationship and the legality of the calls is related to Plaintiff's service.  However, the Court need not delve into the merits of Plaintiff's claims and rests upon the conclusion that the dispute does fall under the scope of the arbitration provision in the Customer Agreement.

Plaintiff's attempts to distinguish *Andermann* from the case at hand are unsuccessful. First, Plaintiff argues that the contract in *Andermann* contained a survivability provision for the arbitration agreement.  As discussed above, the Customer Agreement here contains a survivability clause and, even if it did not, there is a "presumption in favor of post-expiration arbitration of matters unless negated expressly or *by clear implication* [for] matters and disputes arising out of the relation governed by contract." *Litton*, 501 U.S. at 204 (internal quotation marks and citation omitted).  Second, Plaintiff argues that in *Andermann* the calls from Sprint were "regarding the expiration of the current services and were necessitated by a service interruption which occurred during the term of the contract which contained the arbitration clause." Pl's Opp. at 11.  Plaintiff is mistaken.  In fact, the court in *Andermann* stated that the

contract between Sprint and plaintiffs terminated before the phone calls that are the basis of this lawsuit. 785 F.3d at 1158.

Plaintiff's argument that the calls here do not "relate to" the Customer Agreement is unavailing. Distilled, Plaintiff's argument is that: (1) there is no contractual nexus between the Customer Agreement and the at-issue calls; and (2) a broad reading of the Customer Agreement such as DIRECTV suggests would lead to "absurd results." The Court need not belabor the point that it finds that the calls are sufficiently "related to" the Customer Agreement.[1] As to Plaintiff's suggestion that interpreting the Customer Agreement to relate to future telemarketing calls would lead to absurd results, it is not the case here that the parties are being forced to arbitrate a wholly unrelated cause of action. *See Smith v. Steinkamp*, 318 F.3d 775, 778 (7th Cir. 2003) (holding that a waiver agreement did not apply to future disputes and noting that if the agreement's clauses were read as "standing free from any loan agreement, absurd results ensue, for example that if Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash . . . Instant Cash could insist that the wrongful

---

[1] Plaintiff primarily relies upon the decision in *Holcombe v. DIRECTV, LLC*, 159 F. Supp.3d 1337 (N.D. Ga. 2016), in support of its argument that its TCPA claims are beyond the scope of the parties' arbitration agreement. The underlying facts in *Holcombe* mirror those at issue here—plaintiff terminated service with DIRECTV and subsequently received calls aimed at soliciting plaintiff to enter into a new service agreement and DIRECTV argued that plaintiff's claims were subject to arbitration based off of the prior customer agreement which contained an arbitration provision. *Id.* at 1339. In *Holcombe*, the parties disputed whether the telephone calls were placed before or after termination of plaintiff's DIRECTV service. 159 F. Supp. 3d at 1342. The court rejected DIRECTV's assertion that plaintiff's claims were based on calls made during his active service contract and instead relied on plaintiff's assertions in the complaint that the calls took place following termination of his DIRECTV service. *Id.* The district court held that plaintiff's claims do not fall within the scope of the parties' arbitration agreement "because the nature of the calls made by DIRECTV assumes the *nonexistence* of a contractual relationship with the recipient, it cannot be said that such calls are an 'immediate, foreseeable result of the performance of the parties' contractual duties.'" *Id.* at 1343 (emphasis in original) (internal citations omitted). However, this Court is not bound by the decision of the court in *Holcombe* and respectfully disagrees with the court's conclusions.

death claim be submitted to arbitration."). The Court's findings are limited to the present factual circumstances—Plaintiff unsuccessfully attempted to negotiate a new service plan with DIRECTV, terminated service with DIRECTV, and subsequently received solicitation calls from DIRECTV to inform Plaintiff of new service plans and offers. Accordingly, the Court finds that the dispute is subject to arbitration as set forth in the Customer Agreement.

IV.   **CONCLUSION**

For the foregoing reasons, it is ORDERED AND ADJUDGED that DIRECTV'S Motion to Compel Arbitration (ECF No. 10) is GRANTED. The Parties are hereby ORDERED to submit this dispute to arbitration pursuant to the Customer Agreement within thirty (30) days of the date of this Order. All proceedings in this action are STAYED pending arbitration of the Parties' dispute. The Parties are directed to notify the Court of the outcome of the arbitration within thirty (30) days of its completion. The Clerk of the Court is directed to administratively CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of September, 2016.

                                                          K. MICHAEL MOORE
                                                          UNITED STATES DISTRICT JUDGE

cc:   All counsel of record