IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION NO. 1:16-CV-22090

CHIEF JUDGE K. MICHAEL MOORE
MAGISTRATE JUDGE CHRIS M. MCALILEY

| | |
|---|---|
| SHEHAN WIJESINHA, individually and on behalf of all others similarly situated, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| DIRECTV, LLC, | ) ) |
| *Defendant.* | ) |

### DEFENDANT DIRECTV, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Shehan Wijesinha's request for reconsideration makes two erroneous arguments: (1) that this Court's careful application of the Seventh Circuit's decision in *Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157 (7th Cir. 2015), which compelled arbitration under nearly identical circumstances, was incorrect; and (2) that a decision subsequently entered by the Eastern District of New York under very different circumstances calls into question this Court's Order. Not only do Wijesinha's arguments lack legal merit, they do not come close to satisfying the legal standard for granting reconsideration—a standard this Court has applied consistently. The Court accordingly should reject Wijesinha's latest attempt to circumvent his arbitration agreement.

**I.  WIJESINHA GLOSSES OVER THE LEGAL STANDARDS APPLICABLE TO MOTIONS FOR RECONSIDERATION.**

Wijesinha confuses the standard for *appellate* review of a district court's decision to grant or deny a motion for reconsideration with the standards that apply to a district court's decision on

a motion for reconsideration in the first instance. Pl.'s Mem. in Supp. of Mot. for Reconsideration ("Mem.") at 2. In fact, the "abuse of discretion" standard applies only to appellate review; this Court's standards for determining whether to grant reconsideration in the first place are far more stringent.

To begin with, as this Court has underscored, "[a] motion for reconsideration 'is generally not favored and is properly granted only upon a showing of *exceptional circumstances*.'" *JTR Enters., LLC v. An Unknown Quantity*, 2014 WL 12498217, at *1 (S.D. Fla. July 10, 2014) (Moore, C.J.) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)) (emphasis added). Specifically, a motion for reconsideration must "set forth facts or law of a *strongly convincing* nature to induce the court to reverse its prior decision." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007) (Moore, C.J.) (quoting *Socialist Workers Party v. Leahy,* 957 F. Supp. 1262, 1263 (S.D. Fla. 1997)) (emphasis added).

Second, a movant cannot prevail simply by reiterating arguments already considered and rejected by the Court. "A motion for reconsideration should raise new issues, not merely address issues litigated previously." *JTR*, 2014 WL 12498217, at *1. Indeed, "[i]t is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through— rightly or wrongly." *Cazorla Salinas v. Weinkle*, 2015 WL 11198008, at *1 (S.D. Fla. Oct. 2, 2015) (internal quotation marks omitted).

## II. WIJESINHA'S WARMED-OVER ATTEMPTS TO DISTINGUISH *ANDERMANN* ARE NO MORE PERSUASIVE NOW THAN WHEN HE FIRST RAISED THEM.

Wijesinha first attempts to rehash the distinctions of the Seventh Circuit's decision in *Andermann* that he offered in his opposition to the motion to compel arbitration. That effort not only contravenes this Court's instructions in *JTR*, but also is unpersuasive on the merits. As this Court explained in granting DIRECTV's motion to compel arbitration, *Andermann* involved a

2

"similar set of facts" to those here (Order at 7) and unequivocally supports this Court's decision that Wijesinha's claims are within the scope of his arbitration agreement.

In light of Wijesinha's arguments, clarifying the facts in *Andermann* is in order. As the Seventh Circuit explained, "Sprint's contract with [the Andermanns] terminated *before* the phone calls that are the basis of [their] lawsuit." *Andermann*, 785 F.3d at 1158 (emphasis added). Indeed, the *Andermann* filings that Wijesinha includes with his motion for reconsideration corroborate this fact. *See* Mem. Ex. A at 2 ("Burch Declaration") ("Plaintiffs assert that Sprint called them after the port was complete."); Mem. Ex. B at 12 ("Seventh Circuit Brief of Defendant-Appellant") ("The Andermanns' Claim Falls Within the Scope Of The Arbitration Clause, Even Though It Is Based On Conduct That Postdates The Service Agreements."). Regardless, the court held that there was "an intimate relation" between the plaintiffs' claims and their contract because the calls were intended to "prevent the loss of … these customers." *Andermann*, 785 F.3d at 1158-59.

Thus, contrary to Wijesinha's characterization, the calls in *Andermann* were not made "with the primary purpose of advising [the plaintiffs] of the termination of their existing services." Mem. at 5. As the Seventh Circuit's decision makes clear, Sprint "offer[ed]" the Andermanns "a substitute service" to keep them on as customers *after* their previous service was terminated. *Andermann*, 785 F.3d at 1159. The situation is no different here: DIRECTV contacted Wijesinha to "inform [him] of new service plan options" and to convince him to renew his service with DIRECTV. Order at 7.

In addition, Wijesinha argues—for the first time—that *Andermann* is distinguishable because he "instructed that DirecTV not place any future calls to his cellular telephone." Mem. at 5. That is a red herring. Whether or not Wijesinha told DIRECTV not to make any more calls may be relevant to the merits of his claim, but it has nothing to do with whether his claims fall within

3

the scope of his arbitration agreement. In any event, because this argument rests on facts that were in Wijesinha's possession at all times, it is one that he could have made in opposition to DIRECTV's motion to compel arbitration, but didn't. He has accordingly forfeited the argument. *See, e.g.*, *Brady v. Medtronic, Inc.*, 2014 WL 1377830, at \*6 (S.D. Fla. Apr. 8, 2014). For related reasons, it is inappropriate for Wijesinha to raise this argument for the first time in his motion for reconsideration. *See, e.g.*, *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao LTDA*, 2010 WL 11442640, at \*1 (S.D. Fla. Aug. 5, 2010) ("A motion for reconsideration is not an opportunity for a party to improve upon his or her arguments or to try out new ones.") (internal quotation marks omitted).[1]

In any event, this Court's decision did not rest on *Andermann* alone. As the Court explained, "'[f]ederal courts interpret arbitration clauses broadly where possible,' and 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" Order at 6 (quoting *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988-89 (11th Cir. 2012)). And, as the Court also noted, "[t]he arbitration provision in the Customer Agreement is broad"— requiring only that a claim must "relate to … the customer's service" to be arbitrable. *Id.* at 7. Here, there can be no reasonable dispute that calls about restarting Wijesinha's DIRECTV service "relate[d] to" his agreement and service. This Court got it right the first time.

### III. *WEXLER* INVOLVED VERY DIFFERENT FACTS AND THEREFORE PROVIDES WIJESINHA WITH NO SUPPORT.

Next, seeking to invoke new law in support of his bid for reconsideration, Wijesinha cites *Wexler v. AT&T Corp.*, -- F. Supp. 3d --, 2016 WL 5678555 (E.D.N.Y. Sept. 30, 2016), a decision

---

[1] Likewise, Wijesinha asserts that "the calls received by [him] did not mention or otherwise discuss the prior service he had terminated with DirecTV." Mem. at 5. That is flatly inconsistent with the allegation in his Complaint that DIRECTV representatives "attempted to convince [him] to return as [DIRECTV's] customer." Compl. ¶ 18. It is also, again, an argument that he should have presented in his opposition to DIRECTV's motion.

4

issued a day after this Court's Order. But *Wexler* is distinguishable for at least two independent reasons: (1) it addressed the distinct question of contract formation and enforceability, rather than the scope question at issue in this case; and (2) it involved a very different set of facts.

First, *Wexler* did not address the scope of the arbitration clause at issue. On the contrary, *Wexler* "present[ed] a question of contract *formation*" (2016 WL 5678555, at *3) and concluded that the arbitration clause was not enforceable because there was no "meeting of the minds" (*id.* at *4). Here, Wijesinha "does not argue that there was never a valid agreement to arbitrate." Order at 3. *Wexler* therefore stands for a different proposition entirely and has no bearing on this Court's ruling as to scope.

Second, and more fundamentally, even if *Wexler* had some bearing on the scope question, the facts at issue in *Wexler* were very different from those here. The plaintiff's claims in *Wexler* involved a dispute that was unrelated to the service that AT&T Mobility provided to Wexler under the agreement that contained the arbitration provision; instead, it was a dispute with an affiliated AT&T company with which Wexler had no direct contractual relationship, and the calls that were placed by the separate affiliated company were aimed at a different customer and related to that other customer's AT&T U-Verse (television, Internet, and residential voice) service. *Wexler*, 2016 WL 5678555, at *1. Here, by contrast, the calls were made by the *same* company (DIRECTV) and were aimed at convincing Wijesinha to restart his *previous* DIRECTV service. Wijesinha's claims, therefore, fall well within the scope of his arbitration provision, not at some hypothetical outer bound.[2]

---

[2]    Although this Court need not reach the issue, we also submit that *Wexler* was mistaken in concluding that there was no meeting of the minds. Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Computer Assocs. Int'l, Inc. v. U.S. Balloon Mfg. Co.*, 10 A.D. 3d 699, 699 (N.Y. App. Div. 2004). "[A] contract is 'unambiguous when it has a definite and precise meaning

5

Because *Wexler* involved a very different set of facts, it provides no basis for reconsidering this Court's Order.

## CONCLUSION

The motion for reconsideration should be denied.

Dated: November 14, 2016

Respectfully submitted,

*/s/ Manuel Garcia-Linares*
Manuel Garcia-Linares
RICHMAN GREER, P.A.
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134

Archis A. Parasharami (*pro hac vice* pending)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
aparasharami@mayerbrown.com

*Attorneys for Defendant DIRECTV, LLC.*

---

and where there is no reasonable basis for a difference of opinion.'" *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (quoting *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)). In other words, if the operative words of the contract have "a definite and precise meaning" as to which "there is no reasonable basis for a difference of opinion," the requisite meeting of the minds exists *as a matter of law*. That was manifestly the case with the arbitration provision in *Wexler*, which states in terms that could not be clearer that it covers "all disputes and claims" against AT&T and any of its "affiliates," which includes the defendant in *Wexler*.

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a true and correct copy of the foregoing has been filed using the CM/ECF system this 14th day of November, 2016 which sends electronic notice to counsel of record who are registered with the CM/ECF system.

                */s/ Manuel Garcia-Linares*
                Manuel Garcia-Linares